IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SIMONE L. BLACKWELL,

        Plaintiff,                     No. CIV S-08-1454 EFB

        vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.               ORDER
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, plaintiff's motion for summary judgment and/or remand is granted, and the Commissioner's cross-motion for summary judgment is denied. The matter is remanded for further proceedings as directed in this opinion.

I. BACKGROUND

       Plaintiff applied for SSI on September 27, 2005. Administrative Record ("AR") 15. Plaintiff's application alleged that she had been disabled since January 1, 2004. *Id.* Plaintiff's application was denied on December 16, 2005, and again upon reconsideration on April 11, 2006. *Id.* On July 25, 2007, a hearing was held before administrative law judge ("ALJ") Stanley

1

R. Hogg. *Id.* Plaintiff, who was represented by attorney Jonathan A. Hendricks, testified at the hearing. *Id.*

The ALJ issued a decision on October 19, 2007, finding that plaintiff was not disabled.[1] *Id.* at 15-27. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since September 27, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*)...
>
> 2. The claimant has the following severe impairment: Status post abdominal surgeries (including temporary colostomy) with complaints of constant chronic pain, and obesity (20 CFR 416.920(c)).
>
> ***
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> ***

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

     4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light unskilled work. Mentally, the claimant is able to perform unskilled work tasks not requiring good reading and writing skills. She is able to respond appropriately to supervisors, co-workers, and the public. She is able to adapt to changes in a work routine...

     ***

     5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

     ***

     6. The claimant was born on February 29, 1964 and was 41 years old, which is defined as a younger individual age 18-44, on the date that the SSI application was filed (20 CFR 416.963).

     7. The claimant has limited 8th grade education...and is able to communicate in English (20 CFR 416.964).

     8. Transferability of job skills is not possible due to her restricted residual capacity assessment (20 CFR 416.968).

     9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c), and 416.966).

     ***

     10. The claimant has not been under a disability, as defined in the Social Security Act, since September 27, 2005, the date the SSI application was filed (20 CFR 416.920(g)).

*Id.* at 17-26.

     Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 11. However, on April 24, 2008, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 4-6.

II. MEDICAL BACKGROUND

     On November 1, 2005, Janice Nakagawa, Ph.D., performed a consultative psychological evaluation of Plaintiff. *Id.* at 125. Plaintiff told Dr. Nakagawa that she thought she had a learning disorder, but was never in special education classes. *Id.* Plaintiff lived with one

3

of her sons and spent her days watching television, cleaning, cooking sometimes, paying bills and doing grocery shopping. *Id.* at 126. WAIS-III (Wechsler Adult Intelligence Scale) IQ testing reflected a Verbal IQ score of 70, Performance IQ of 80, and a Full Scale IQ of 78. *Id.* at 127. Dr. Nakagawa stated that testing showed that plaintiff "functions overall in the borderline range with borderline verbal and low average nonverbal skills," and "borderline range" memory. The doctor also stated, "[w]hile she reports problems with a learning disability, perhaps her learning problems, particularly reading, are due to borderline intellectual functioning rather than any actual problems with a learning disability. She probably could benefit from vocational training." *Id.* at 128.

On December 2, 2005, state agency physician Lon Gottschalk opined that plaintiff had borderline intellectual functioning that "does not precisely satisfy the diagnostic criteria [for mental retardation]," and did not have an impairment that met or equaled listing 12.05. *Id.* at 130-34, 142, 149. On April 6, 2006, state agency physician Charlotte Bible reviewed the record and affirmed Dr. Gottschalk's opinion regarding plaintiff's mental functioning. *Id.* at 150-51.

At the hearing, plaintiff testified that her highest level of education was the 8th grade. *Id.* at 546. She reported that she could only read and spell at a very low level. She stated, "I don't know big words. I don't know how to spell big words. I can read like very little, very little." *Id.* at 547. She stated that this had always been the case "even when I was in school. My parents knew I had a problem, and back then, I mean, there's nothing a child can say . . . ." *Id.* at 548. She said that she dropped out of school because "I was too embarrassed to, every time I go to school, I didn't know how to read. I didn't know how to write. Kids made fun of me, and I just didn't want to go to school anymore. It was very hard. It's very hard." When asked if she could read a newspaper, she replied "not the front page or the middle page. I can glance and look at the paper, but as far as really sitting there reading, no, I can't." *Id.* at 547-548.

The medical records contain copious additional evidence relating to plaintiff's physical health. Notably, in February 2006, plaintiff complained of abdominal pain following a

4

hysterectomy. *Id.* at 447-82. On February 15, 2006, plaintiff was hospitalized and underwent laproscopic surgery and it was discovered that she had a perforated sigmoid colon, which was repaired. *Id.* at 164-67. On July 13, 2006, plaintiff underwent reversal of her colostomy. *Id.* at 160–61. On August 4, 2006, Gregory Graves, M.D., stated that plaintiff had a history of chronic pain and narcotic abuse. *Id.* at 156.

III. ISSUES PRESENTED

Plaintiff contends that the Commissioner erred in sustaining the ALJ's determination that she is not disabled because the ALJ erred in (1) failing to find that her mental impairment met or equaled the criteria under 12.05 in the listing of impairments; (2) rejecting the opinions of her treating physician without a legitimate basis for doing so; and (3) utilizing the GRIDS and failing to secure the testimony of a vocational expert. Dckt. No. 17 at 4.

IV. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

V. ANALYSIS

Plaintiff contends that the ALJ erred in failing to find that her mental impairment met or equaled the criteria under category 12.05 in the listing of impairments.

The ALJ noted that plaintiff's WAIS-III testing resulted in a Verbal IQ score of 70, a Performance IQ of 80, and a Full Scale IQ of 78. AR at 20. The ALJ noted that the psychologist's opinion was that plaintiff's learning problems were due to her borderline intellectual functioning rather than any acute learning disability. *Id.* The ALJ stated that "plaintiff's borderline intellectual functioning" did not meet the definitions in parts A, B, C, or D of section 12.05. *Id.* at 21. With regards to part C, the ALJ wrote "[n]or does her impairment reach the severity defined in Part 'C' of section 12.05. In order to reach the requisite severity criteria of Part 'C,' she must have an IQ *series score* of 60 through 70, as well as another physical or mental impairment that would significantly affect her ability to work." *Id.* After finding that plaintiff's impairment did not meet the severity requirements in parts A-D of section 12.05, the ALJ stated, "[t]he claimant is not mentally retarded and there is no evidence that she had subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period before age 22. Thus Section 12.05 of the listings is not met or equaled although she has a severe physical impairment." *Id.*

Plaintiff argues that because she has a verbal IQ score of 70, she meets the 12.05(C) criteria because when there is more than one IQ score, the lowest score must be used in the Section 12.05 analysis. Plaintiff further argues that the evidence shows that she suffered from a low IQ all of her life, as she was functionally illiterate and dropped out of school prior to the 8th grade, and therefore the evidence shows that her low IQ manifested before age 22.

Defendant argues that in order to meet listing 12.05, plaintiff must prove that she was diagnosed with mental retardation, regardless of her IQ scores. Defendant argues that listing

6

12.05 "separates out the diagnosis of mental retardation from the 'required level of severity' of that diagnosis." Additionally, defendant argues that plaintiff failed to establish that she had mental retardation prior to age 22, because although she dropped out of school in the seventh grade, she was not in special education classes and she left school because she was bored, drinking alcohol, smoking marijuana and engaging in prostitution. Defendant also argues that Doctors Gottschalk and Bible both found that plaintiff's borderline intellectual functioning did not meet listing 12.05, and that this alone constitutes substantial evidence that supports the ALJ's decision.

Listing 12.05 states that mental retardation:

> refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22....The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 CFR Pt. 404, Subpt. P, Appx. 1. Part C is "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[2] *Id.* The regulations provide that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." *Id.*

In general, "[e]ach listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)." *Id.* But:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic

---

[2] As the ALJ found that plaintiff suffered from a severe impairment, the second prong of part C is not disputed in this case.

7

> description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*Id.*

Thus, in order to determine whether a claimant meets or equals listing 12.05, a fact-finder must determine whether the claimant has significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22, and whether the claimant meets one of the severity requirements laid out in parts A-D.  Contrary to defendant's assertion, there is no requirement that a successful claimant must be diagnosed with mental retardation.  This is illustrated by the distinction drawn in the regulations; a claimant must satisfy a set of medical findings in order to make out a claim under other listings, but 12.05 is different.  It only requires that a claimant's impairment satisfy a diagnostic description.

Here, the ALJ erred in determining that plaintiff's impairments did not meet the requirements of 12.05(C).  Then he mistakenly concluded that in order to meet part C, plaintiff must have IQ series scores (plural) of 60 through 70.  AR 21.  However, as explained above, the regulations provide that only the lowest IQ score is used.  Therefore, plaintiff's verbal IQ of 70 was sufficient to meet the requirements of 12.05(C).

The remaining question is whether the ALJ erred in stating, after he concluded that plaintiff did not satisfy parts A, B, C, or D, that plaintiff "is not mentally retarded and there is *no evidence* that she had subaverage general intellectual functioning with deficits in adaptive functioning manifested before age 22." AR 21 (emphasis added).

As the ALJ discussed, Dr. Nakagawa's report stated that plaintiff quit school in the seventh grade.  AR 125.  Dr. Nakagawa diagnosed plaintiff with borderline intellectual functioning.  *Id.* at 128.  The doctor opined that plaintiff's learning problems, "particularly reading, are due to borderline intellectual functioning rather than any actual problems with a learning disability." *Id.*  Her application, filled out by her son, states that she has trouble

8

understanding, and that "my mom has been like this all or some of her life." *Id.* at 84. Plaintiff testified at the hearing she could only read and spell at a very low level, and that this had been the case when she was a child. She testified that her parents "knew I had a problem . . . back then." *Id.* at 548. She said that she dropped out of school because she was embarrassed that she did not know how to read or write. She testified that she could not read a newspaper. *Id.* at 547-548.

Thus, contrary to the ALJ's decision, there was indeed ample evidence in the record that plaintiff had subaverage general intellectual functioning with deficits in adaptive functioning before plaintiff was 22 years old. To be sure, the record also contained evidence to the contrary–state agency physicians Gottschalk and Bible opined that plaintiff did not meet or equal listing 12.05. But the conclusory rulings that plaintiff does not meet either the diagnostic description or the severity requirements of 12.05 are erroneous and must be reversed. In light of these errors, the court remands the case for further proceedings in accordance with this decision.

Plaintiff also argues that the ALJ erred in rejecting the opinions of her treating physician without a legitimate basis for doing so, and utilizing the GRIDS where they are plainly inapplicable and failing to secure the required testimony of a vocational expert. Because the court finds that the case must be remanded for the reasons explained above, it does not decide these issues.

VI. CONCLUSION

For the reasons explained above, the court finds that the ALJ erred in determining that plaintiff did not meet the severity requirement of 12.05(C), and that the record contained no evidence that plaintiff met the diagnostic description of 12.05. This matter is be remanded under sentence four of 42 U.S.C. § 405(g) for further findings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted.

2. The Commissioner's cross-motion for summary judgment is denied.

9

3. This action is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

4. The Clerk is directed to enter judgment for plaintiff.

DATED: March 31, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE